IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | COMPLAINT |
| BALFOUR BEATTY INFRASTRUCTURE, INC., | ) ) ) | JURY TRIAL DEMAND |
| Defendant. | ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on sex and retaliation, and to provide appropriate relief to Angela D. Nicol. As alleged with greater particularity herein, Defendant Balfour Beatty Infrastructure, Inc. subjected Angela D. Nicol, an off-road truck driver on a highway construction project, to a sexually hostile work environment and, when she complained, retaliated against her by transferring her to a less desirable work location.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina, Eastern Division.

## PARTIES

4. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1)and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

5. Defendant, a Delaware corporation, builds infrastructure, including highways, throughout the United States.

6. At all relevant times, Defendant has continually done business in the State of North Carolina, and in Craven County, North Carolina, and has continuously had at least 15 employees.

7. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

8. More than thirty (30) days prior to the institution of this lawsuit, Angela D. Nicol ("Ms. Nicol") filed a charge with the Commission alleging violations of Title VII by Defendant.

9. On April 14, 2023, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. On June 21, 2023, the Commission notified Defendant that conciliation had failed.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14. Since at least October 2020 until February 2022, Defendant engaged in unlawful employment practices at its work sites in Craven County, North Carolina, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-(2)(a).

15. Beginning in October 2020, Defendant employed Ms. Nicol as an off-road truck driver for a highway construction project in Craven County, North Carolina.

16. The project was divided into six zones which operated as independent job sites.

17. Defendant initially assigned Ms. Nicol to Zone 1 where she operated a roller, which flattens the ruts caused by trucks on the job site, and a sweeper, which cleans debris from the road into and out of the job site.

18. After a few months, Ms. Nicol was transferred to Zone 5. In Zone 5, Ms. Nicol's primary responsibility was to operate a dump truck bringing in clay and sand used to form the first layer of road construction.

19. During the time Ms. Nicol worked in Zone 5, Ms. Nicol's Foreman allowed her to train on the operation of mini-excavators and bulldozers, and other heavy equipment.

20. Ms. Nicol worked at the Zone 5 job site until January 2022.

21. In or around November or December 2021, Ms. Nicol's Foreman notified her that he wanted to transfer her to another project called the James City job site. The Foreman told Ms. Nicol that he was being promoted to Superintendent for the James City job site and wanted to bring his best employees with him to that job site.

## COUNT I:
### *Sex Harassment and Hostile Environment in Violation of Title VII*

22. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 21 above.

23. From at least October 2020 until January 2022, Defendant engaged in unlawful employment practices at work sites in Craven County, North Carolina, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-(2)(a), by subjecting Ms. Nicol to sex harassment and a sexually hostile work environment.

24. Specifically, during the months of March and April 2021, Ms. Nicol was routinely harassed by a male coworker (Coworker 1).

25. The harassment by Coworker 1 included but was not limited to:

   a. asking Ms. Nicol to "talk dirty" to him;

   b. asking her for photos of her breasts;

   c. telling her he would teach her to drive the bulldozer if she would "sit on his lap"; and

   d. sending her sexually explicit and suggestive text messages.

26. Ms. Nicol reported the upsetting and unwelcome sexual conduct by Coworker 1 to her Foreman.

27. In response to her complaint, the Foreman laughed and advised her, "that's just how [Coworker 1] is."

28. Coworker 1's harassment of Ms. Nicol continued after she reported his unwelcome sexual conduct to her Foreman.

29. In or around December 2021 and January 2022, Coworker 1 sent Ms. Nicol a series of sexually explicit text messages that included photos of Coworker 1's penis. Coworker 1 also sent text messages requesting photos of Charging Party and stated "[y]ou know I love talking dirty to you" and "[y]ou want to come and sit in my lap and run this dozer."

30. Between April 2021 and December 2021, a second coworker (Coworker 2) treated Ms. Nicol with hostility and disdain because of her sex, female.

31. Coworker 2 referred to Ms. Nicol in sexually derogatory terms such as "bitch" and "cunt" on a routine basis.

32. When Ms. Nicol attempted to talk to her coworkers, Coworker 2 would tell her "shut the fuck up, you stupid bitch" and make other similar statements, which caused the other employees to laugh.

33. Coworker 2 also used these epithets toward Ms. Nicol openly over the CB radio utilized on the worksite.

34. Coworker 2 used this same abusive language toward Ms. Nicol in close proximity to, and where it could be heard by, their Foreman.

35. Coworker 2 also made comments about Ms. Nicol's "ass," directed his phone camera at her buttocks, and, on information and belief, snapped photographs of Ms. Nicol's

buttocks. Ms. Nicol estimates that Coworker 2 took photographs of her buttocks between six and eight times.

36. On multiple occasions beginning in the summer of 2021, Ms. Nicol complained to her Foreman about Coworker 2's language, asking him whether he heard the way Coworker 2 spoke to her. The Foreman's responses included, *inter alia*, "tell him to shut the fuck up," "I need to talk to him," and "I have talked to him." However, Coworker 2's sexually abusive language to Ms. Nicol did not stop.

37. Coworker 2's harassment continued after Ms. Nicol complained to her Foreman about Coworker 2's unwelcome sexual and sex-based conduct.

38. Other male coworkers also made vulgar sex-based insults and disparaging comments about women and toward Ms. Nicol throughout her employment. These comments included but were not limited to:

    a. Making general comments about "tits" and "ass";

    b. Speaking of "bending girls over" to have sex;

    c. Calling Ms. Nicol "stupid bitch" and "cunt;" and

    d. Telling Ms. Nicol "this is a man's world" and "if you can't handle it then go work for Walmart."

39. The sexual harassment engaged in by Ms. Nicol's male coworkers was open, obvious, and generally known by Defendant and Defendant's employees.

40. The Foreman responsible for supervising Ms. Nicol's employment, to whom Ms. Nicol complained about sexual harassment on multiple occasions and who was present when much of the harassment occurred, took no action to end the harassment.

41. Defendant's inaction allowed the male employees to further abuse Ms. Nicol, causing her significant and continuing distress.

42. Other of Defendant's employees would often laugh in response to the open, lewd, and harassing statements made toward Ms. Nicol.

43. Ms. Nicol would often break down in tears from the ongoing and traumatic nature of the sexual and sex-based harassment, and because of Defendant's refusal to take effective action to stop it, causing her further distress and embarrassment.

44. Defendant knew or should have known about its employees' sexually hostile conduct toward Ms. Nicol on its work sites and over its CB radios.

45. Defendant failed to take prompt and effective action to stop the sexual and sex-based harassment of Ms. Nicol.

46. The harassment engaged in by Coworker 1, Coworker 2, and other coworkers, as described herein, created a hostile work environment for Ms. Nicol because of her sex, female.

47. The sexual and sex-based harassment of Ms. Nicol was severe or pervasive to the point of altering the terms and conditions of Ms. Nicol's employment and created an abusive work environment.

48. The practices complained of above were unlawful and in violation of Title VII.

49. The unlawful practices complained of deprived Ms. Nicol of equal employment opportunities and have otherwise adversely affected her status as an employee because of her sex, female.

50. The unlawful practices complained of above were willful and intentional.

51. The unlawful practices complained of above were committed with malice or, at a minimum, with reckless indifference to Ms. Nicol's federally protected rights.

52. As a direct and proximate result of Defendant's violation of Title VII, Ms. Nicol suffered actual damages, including but not limited to humiliation, emotional distress, and loss of enjoyment of life.

## COUNT II:
### *Retaliation in Violation of Title VII*

53. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 52 above.

54. In or around January and February 2022, Defendant engaged in unlawful employment practices at work sites in Craven County, North Carolina, in violation of Section 703(a) of Title VII, 42 U.S.C. 2000e-(2)(a), by denying Ms. Nicol an expected transfer to the desirable James City project and by assigning her permanently to work at location known for poor working conditions in retaliation for Ms. Nicol complaining about the sexual harassment and the hostile work environment based on sex.

55. On or about January 25, 2022, a coworker of Ms. Nicol approached one of Defendant's superintendents to advocate for Ms. Nicol who was still being subjected to sexually harassing conduct at the work site.

56. Defendant's Superintendent then asked Ms. Nicol about the harassment at the work site. Ms. Nicol advised the Superintendent of the same things of which she had previously made her Foreman aware, including Coworker 1's sexually explicit text messages and "dirty talk" and Coworker 2's and other employees' routine use of the terms "bitch" and "cunt" to her.

57. Defendant's Superintendent directed Ms. Nicol to speak to the Project Manager and the Project Business Manager, which Ms. Nicol did, repeating her complaints to both men.

.

58. After Ms. Nicol's report of harassment to Defendant's upper management, Defendant reversed its plan to transfer Ms. Nicol to the James City job site and instead sent her permanently to work in another zone, which was less desirable than Defendant's other job sites.

59. By contrast, Coworker 1, who Ms. Nicol reported as a primary offender of the sexual harassment, was transferred to the sought-after James City project.

60. Defendant's actions of refusing to transfer Ms. Nicol to the James City job site and permanently transferring her to the least desirable job site were in retaliation for Ms. Nicol engaging in the statutorily protected conduct of reporting sexual harassment and hostile working conditions based on sex.

61. The unlawful practices complained of above were willful and intentional.

62. The unlawful practices complained of above were committed with malice or with reckless indifference to Ms. Nicol's federally protected rights.

63. As a direct and proximate result of Defendant's violations of Title VII, Ms. Nicol suffered actual damages, including but not humiliation, emotional distress, and loss of enjoyment of life.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with Defendant, from discriminating on the basis of sex, allowing sexual harassment in the workplace, from allowing a hostile work environment based on sex, and from engaging in employment practices which negatively affect persons who oppose conduct made unlawful by Title VII.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for females and for persons who engage in protected activity under Title VII, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Angela D. Nicol whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

D. Order Defendant to make Angela D. Nicol whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional suffering, inconvenience, humiliation, loss of enjoyment of life, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

E. Order Defendant to pay to Angela D. Nicol punitive damages for its willful, malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

**This the 6th day of September, 2023.**

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
Acting General Counsel

131 M Street, NE
Washington, D.C. 20507

CHRISTOPHER LAGE
Deputy General Counsel

MELINDA C. DUGAS
Regional Attorney


ZOË G. MAHOOD
Supervisory Trial Attorney

/s/ *Gabriel O. Mondino*
GABRIEL O. MONDINO
Trial Attorney
400 N. 8th Street, Suite 350
Richmond, VA 23219
Phone: (804) 862-6916
Fax: (704) 954-6412
Email: gabriel.mondino@eeoc.gov
Louisiana State Bar No. 31514


*/s/ Amy E. Garber*
AMY E. GARBER
Trial Attorney
Norfolk Local Office
200 Granby Street, Suite 739
Norfolk VA 23510
Phone: (757) 633-7100
Fax: (757) 441-6720
Email: amy.garber@eeoc.gov
VA Bar No. 37336

**ATTORNEYS FOR PLAINTIFF**